1
2
3
4
5
6
7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    JESSYKA GAMA, on behalf of X.L.,              No.  2:17-CV-1969-MCE-DMC

12                        Plaintiff,

13            v.                                     <u>FINDINGS AND RECOMMENDATIONS</u>

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                          Defendant.
16

17

18            Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19    review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20    Pending before the court are the parties' brief on the merits (Docs. 14, 15, and 24).

21            The court reviews the Commissioner's final decision to determine whether it is:

22    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

23    whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

24    more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521

25    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

26    a conclusion."  <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

27    including both the evidence that supports and detracts from the Commissioner's conclusion, must

28    be considered and weighed.  <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones</u>

                                                    1

1   v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

2   decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3   Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4   findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5   Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6   Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7   which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9   standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11          For the reasons discussed below, the court recommends the matter be remanded

12  for further proceedings.

13

14                    **I.  THE DISABILITY EVALUATION PROCESS**

15          This case involves a child's application for social security benefits.  Child's

16  Supplemental Security Income is paid to disabled persons under the age of eighteen.  A child is

17  considered disabled if the child has a medically determinable physical or mental impairment that

18  results in marked and severe functional limitations.  See 42 U.S.C. § 1382c(a)(3)(C)(I).  The

19  Commissioner employs a three-step sequential evaluation process to determine whether a child is

20  disabled.  See 20 C.F.R. § 416.924(a)-(d).  The sequential evaluation proceeds as follows:

21          Step 1        Determination whether the claimant is engaged in
22                        substantial gainful activity; if so, the claimant is presumed
                          not disabled and the claim is denied;

23          Step 2        If the claimant is not engaged in substantial gainful activity,
24                        determination whether the claimant has a severe
                          impairment; if not, the claimant is presumed not disabled
25                        and the claim is denied;

26          Step 3        If the claimant has one or more severe impairments,
                          determination whether any such severe impairment meets,
27                        medically equals, or functionally equals an impairment
                          listed in the regulations; if the claimant has such an

28  / / /

                                           2

impairment, the claimant is presumed disabled and the clam is granted.

See 20 C.F.R. § 416.924(a)-(d).

Evaluation of a childhood disability claim does not involve determination of the claimant's residual functional capacity or consideration of vocational issues.

## II.  THE COMMISSIONER'S FINDINGS

An application for social benefits was filed on behalf of claimant, a minor child, on January 30, 2014. See CAR 19.[1]  In the application, claimant claims disability began on February 1, 2012.  See id.  Claimant's claim was initially denied.  Following denial of reconsideration, claimant requested an administrative hearing, which was held on October 21, 2014, before Administrative Law Judge (ALJ) Peter F. Belli.  In an August 5, 2016, decision, the ALJ concluded claimant is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): Tourette's syndrome; obsessive-compulsive disorder (OCD); and anxiety disorder;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations; and

3. The claimant does not have an impairment or combination of impairments that functionally equals the severity of an impairment listed in the regulations.

See id. at 19-27.

After the Appeals Council declined review on July 18, 2017, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are the to the Certified Administrative Record (CAR) lodged on January 16, 2018 (Doc. 10).

3

# III. DISCUSSION

In her opening brief, plaintiff argues: (1) the ALJ failed by comply with Acquiescence Ruling 04-1(9), which requires the ALJ to obtain a case evaluation from a medically appropriate specialist; (2) the ALJ erred in evaluating statements and testimony provided by the minor child claimant and his mother; (3) the ALJ erred with respect to application of the Listings of Impairments; and (4) the ALJ erred with respect to functional equivalency.

## A. **Acquiescence Ruling 04-1(9)**

### 1. ALJ's Analysis

Regarding the medical opinions, the ALJ relied on the opinions of evaluating consultative doctors, Troy Ewing, Psy.D., R. Ryan Gunton, Ph.D., Parimal Shah, M.D. See CAR 25-26. The ALJ also relied on the opinions of state agency non-examining consultants, L. Colsky, M.D., and R. Peterson, M.D. See id. at 26. As to these opinions, the ALJ stated:

> The undersigned gave significant weight to Dr. Ewing, Gunton and Shah's consultative examination (CE) medical opinions, the State agency medical consultants' and classroom teacher opinions. These opinions are consistent with the discussed treatment notes that showed that his mental and physical conditions are well controlled and that he does not meet, medically equal, or functionally equal the listings.

> Id.

### 2. Plaintiff's Contentions

Plaintiff argues the ALJ's reliance on the medical opinion evidence in this case violated Acquiescence Ruling 04-1(9). According to plaintiff:

> Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006 (9th Cir. 2003) resulted in Acquiescence Ruling 04–1(9). (footnote omitted). This requires the administrative law judge in a Title XVI child's case "to make a reasonable effort to obtain a case evaluation, based on the record in its entirety," from a qualified and medically appropriate specialist, "rather than simply constructing his own case evaluation from the record." (Howard at 1014) In Howard, various doctors opined, but the Ninth Circuit remanded because none did so based on the record as a whole. (Id.) AR 04–1(9) makes this binding on Social Security within the Ninth Circuit.
> This case law and ruling were not followed here. No such effort was made. The decision not only does not comply in any way with AR 04–1(9), it does not even mention it.

4

The decision gives "significant weight" to both the physical and psychological consultative examiners, all state agency nonexaminers, and two somewhat inconsistent teacher questionnaires. (footnote omitted). Equal bestowal of vague weight on everybody becomes meaningless. In reality, the decision's functional equivalency domain assessments, which are why this claim was denied, perfectly track the nonexaminers. (footnote omitted). The second nonexaminer opined by 9/15/14 (transc., p.103); the CEs occurred in May and June 2014 (see statement of facts); both teacher questionnaires were executed in April 2014.

All the information in the three later treating neurologist reports (see statement of facts) — which was consistent with X.'s and his mother's testimony — came after this.

One nonexaminer was a psychologist (e.g., transc., p.88); the specialty of the other isn't clear, though we know he also has a master's in public health. (E.g., transc., p.99) Neither the decision nor the file shows either doctor specialized in children.

There is no showing by the decision or file of an effort to ensure these doctors had "appropriate specialization." X.'s impairments are probably neurological. His treating specialist is a pediatric neurologist — but no effort was made to secure Dr. Asaikar's input, and the decision doesn't even weight [sic] his opinions. The decision issued in August 2016, and it's just been pointed out that Dr. Asaikar's three later and most descriptive and alarming charts date from after any of the (vaguely) relied on sources. Thus, it cannot be said that Acquiescence Ruling 04–1(9) and *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006 (9th Cir. 2003) have been complied with: The decision gave the same vague weight to everybody else (except, as will be seen, X. and his mother), but none of this crowd opined based on "the record as a whole"; they all missed the more important information from the most appropriate specialist, Dr. Asaikar. And they all spoke their pieces two and more years before the decision issued, missing all that "record."

This case should be reversed. Howard and this AR have been followed repeatedly just in this District. (*Jensen v. Colvin*, No. 2:13-cv-01822-AC (E.D.Cal. 3/18/15), *citing Willmett ex rel. A.P. v. Astrue*, No. 2:10-cv-01201 KJN, 2011 WL 3816284 (E.D.Cal. 8/25/11); *Robinson v. Astrue*, No. CIV S-08-2296 DAD, 2010 WL 3733993 (E.D.Cal. 9/21/10)).

3.      Applicable Legal Standards

In Acquiescence Ruling (AR) 04-1(9), the Commissioner explains the impact of the Ninth Circuit's decision in Howard on behalf of Wolff v. Barnhart, 341 F.3d 1006 (9th Cir. 2003), on childhood disability evaluations. See AR 04-1(9). According to the ruling, the issue is: "Whether the provisions of section 1614(a)(3)(I) of the Social Security Act apply to Administrate Law Judge (ALJ) and Administrative Appeals Judge (AAJ) decisions. See id. The ruling

/ / /

/ / /

/ / /

5

outlines the court's opinion as follows:

> The Ninth Circuit held that, although the ALJ's decision was supported by substantial evidence, the ALJ committed a legal error by not complying with the mandate of section 1614(a)(3)(I) of the Act, 42 USC 1382c(a)(3)(I). Section 1614(a)(3)(I) stated, in part, that in making "any determination" under title XVI of the Act "with respect to the disability of an individual who has not attained the age of 18," the Commissioner "shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual . . . evaluates the case" of the individual. The Court of Appeals interpreted this to mean that an ALJ is required to make reasonable efforts to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply evaluating the evidence in the case record on his or her own. The Court of Appeal noted that, despite the various reports from doctors and specialists offering their medical opinion in Sarah's case, the ALJ did not have her case evaluated as a whole. The court also stated that "[i]t may be that the ALJ achieved substantial compliance with the statute, in that the state agency doctors . . . who did evaluate Sarah's case[] may be appropriate qualified specialists; however, we cannot make that determination on the record. In addition, the ALJ did not consider these evaluations in making his decision."

> Id.

As to how the court's decision in <u>Howard</u> differs from the Commissioner's interpretation of the Social Security Act, the ruling states:

> Our regulations make clear that section 1614(a)(3)(I) of the Act, 42 USC 1382c(a)(3)(I), applies only to determinations made by a State agency and not to decisions made by ALJs or AAJs (when the Appeals Council makes a decision). The words "determination" and "decision" are terms of art in our program, defined in our regulations at 20 C.F.R. 416.1401. This regulation explains that the word "determination" means the initial determination or reconsideration determination, while the term "decision" means the decision made by the ALJ or the Appeals Council. Our regulations that implement section 1614(a)(3)(I) of the Act maintain this distinction, providing that the requirement for review by a pediatrician or other appropriate specialist in childhood SSI cases applies only to cases decided by State agencies at the initial and reconsideration levels of the administrative review process. See 20 C.F.R. 416.903(f) and 416.1015(a). (footnote omitted).

> The Ninth Circuit interpreted the statutory provisions more broadly than we do, by applying it to cases decided by an ALJ or AAJ (when the Appeals Council makes a decision).

> Id.

/ / /

/ / /

Finally, the ruling explains how the Commissioner will comply with <u>Howard</u>:

> For cases that are subject to this ruling, ALJs and AAJs (where the Appeals Council makes a decision) must make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as identified by the ALJ or AAJ) evaluates the case of the individual. To satisfy this requirement, the ALJ or AAJ may rely on case evaluation made by a State agency medical or psychological consultant that is already in the record, or the ALJ or AAJ may rely on the testimony of a medical expert. When the ALJ relies on the case evaluation made by a State agency medical or psychological consultant, the record must include the evidence of the qualifications of the State agency medical or psychological consultant. In any case, the ALJ or AAJ must ensure that the decision explains how the State agency medical or psychological consultant's evaluation was considered. . . .

> <u>Id.</u>

4.      <u>Disposition</u>

Plaintiff argues the ALJ violated AR 04-1(9) because the record does not indicate the doctors who evaluated claimant's case possessed the appropriate specialization. Plaintiff also argues the ALJ violated the ruling because the doctors did not have access to the record as a whole. Specifically, plaintiff argues the ALJ relied on medical opinions rendered before treating sources rendered their opinions. Defendant argues AR 04-1(9) does not apply to decisions made by ALJs. Defendant also argues the ALJ did not violate AR 04-1(9) because the ALJ relied on case evaluations already in the record.

At the outset, the court rejects defendant's suggestion AR 04-1(9) does not apply to ALJ decisions. This is a misstatement of the ruling. Contrary to defendant's position, the ruling makes clear it applies to ALJ decisions. While the Commissioner previously interpreted the relevant statute as applying only to initial determinations, the ruling specifically acknowledges the Ninth Circuit ". . .interpreted the statutory provisions more broadly than we do, by applying it to cases decided by an ALJ. . . ." AR 04-1(9). Defendant's position is premised on the Commissioner's interpretation of the relevant statute prior to the <u>Howard</u> decision and is not based on the rule announced in <u>Howard</u> and adopted within the Ninth Circuit by the Commissioner in AR-04-1(9).

/ / /

The ruling specifies exactly how the ALJ is expected to comply with the Ninth Circuit's decision in Howard in childhood disability cases. First, the ALJ must make reasonable efforts to ensure the child's case is evaluated by a "qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability. . . ." of the child. Id. If the ALJ relies on a state agency consultant for this evaluation, the record must contain evidence of the consultant's qualification. See id. Second, the ALJ must ensure the case "as a whole" is evaluated by the appropriately qualified medical professionals. Id.

As to the doctors' qualifications, defendant cites Social Security Ruling 96-6p for the proposition that Drs. Peterson and Colsky, as state agency medical consultants, are necessarily qualified. Citing CAR 92 and 105, defendant states Dr. Peterson meets the necessary qualifications because the doctor specializes in pediatrics. Citing CAR 88, 101, 399, defendant states Drs. Colsky and Gunton are qualified because they specialize in psychology. Finally, citing CAR 506, defendant states Dr. Shah meets the necessary qualifications under Howard and AR 04-1(9) because the doctor is a board-certified internist. While the court agrees with defendant the ALJ may rely on state agency consultant evaluations already in the record, see AR 04-1(9), the ALJ must still comply with Howard's direction regarding the qualifications required for medical professionals rendering opinions in childhood disability cases. The record in this case fails to indicate the necessary qualifications for all of the doctors upon whose opinions the ALJ relied.

Howard and AR-04-1(9) require the record to reflect the case has been evaluated as a whole by a pediatrician or "other individual who specializes in a field of medicine appropriate to the disability of [claimant]." AR 04-1(9). Here, the record indicates Dr. Peterson is a pediatrician. As such, he is specifically qualified with respect to the minor claimant's physical impairments. Dr. Shah, however, is insufficiently qualified because the doctor is an internist and does not specialize in pediatric medicine. Similarly, while Drs. Colsky and Gunton specialize in psychology, there is no indication in the record the doctors have any specialty in childhood psychology, which would be required to render opinions consistent with Howard's interpretation of the Social Security Act regarding a child's mental limitations. Likewise, there is

no indication Dr. Ewing specializes in child psychology.  For these reasons, the court finds the record is sufficient to establish the necessary qualifications for Dr. Peterson, but fails to establish the necessary qualifications in a childhood disability case for Drs. Ewing, Shah, Colksy, and Gunton.

As stated above, <u>Howard</u> and AR 04-1(9) require the case be evaluated "as a whole" by medical professionals with the necessary specialization.  The court need not reach this issue because, for the reasons discussed above, the ALJ erred by relying on evaluations by doctors who did not possess the necessary specializations.  Nonetheless, the court observes the ALJ's 2016 hearing decision discusses medical opinions through 2014 rendered in the absence of subsequent medical records, specifically records from treating pediatric neurologist, Dr. Asaikar. While the court agrees with defendant Dr. Asaikar did not render any specific functional opinions the ALJ was required to consider, and plaintiff does not contend otherwise, Dr. Asaikar's treatment notes after 2014 certainly constitute part of the case "as a whole" which the evaluating doctors did not have the opportunity to consider.  Compliance with <u>Howard</u> and AR 04-1(9) would be assured by current evaluations performed by qualified specialists.

**B.    Evaluation of Subjective Statements**

1.    <u>The ALJ's Analysis</u>

At Step 3 of the sequential analysis for childhood disability claims, the ALJ evaluated the credibility of claimant's statements and testimony.  <u>See</u> CAR 24-26.  As to claimant's credibility, the ALJ stated:

> At the administrative hearing, the claimant testified that he was currently in the 11th grade.  Classes include food, art, ceramics, and English.  He indicated that he has already completed his physical education requirements.  Adaptively, he is able to handle his own personal care.  He is able to prepare meals, do yard work, rides a freestyle bike and does bike tricks.  He goes to the movies, has a couple of friends in the neighborhood and at school.  He plays video games, and uses the internet.  There have been no school suspensions.  He has a drivers permit, but reported that he is always looking around and cannot focus on the street.  The claimant also reported difficulty sleeping and has to get up and walk around.  He has trouble focusing in the classroom, makes noises, likes touching things, and is easily distracted.
>
> <u>Id.</u> at 24.

9

The ALJ concluded claimant's allegations "are inconsistent with mental health records that do not reveal an extreme severity of symptoms." Id. at 25. Specifically, the ALJ stated:

> . . .He generally maintained a GAF score of between 55-60, which in the Children's Global Assessment Scale, indicated there is variable functioning with only sporadic difficulties (Exhibit 8F, pg. 3). Mental status examination was generally within normal limits. He is friendly, cooperative, had normal speech, and interacted appropriately with the examiner throughout the evaluation. No symptoms of motor or vocal tics were observed during the assessment. Motor skills and coordination appeared adequate for age. He appeared to tolerate new and unfamiliar surroundings. He responded to parent appropriately. Concentration was adequate. No self-injurious or acute distress was noted during the evaluation (Exhibit 8F, pg. 3). Treatment notes show mostly good response from medications.
>
> The reports from the claimant's schoolteachers do not indicate any serious problems although there are some reports of problems with distractibility and learning at a faster pace (Exhibit 4E; Exhibit 6E).
>
> The claimant's physical condition similarly appears well controlled. There is no evidence of tics or abnormal movements. The claimant's asthma and sleep apnea appeared stable and well controlled. His daily functional activities were within normal limits (Exhibit 9F, pg. 2). Physical examination was normal with no ongoing signs or issues. He was able to ambulate well and had normal gait (Exhibit 9F, pgs. 2, 4, 5). Neurological and motor examinations were within normal range and sensory exam was intact (Exhibit 12F, pg. 3; Exhibit 13F, pg. 9). Moreover, September 2014 treatment notes document claimant planning to participate in the school football program (Exhibit 13F, pg. 8).

> Id.

The ALJ also concluded claimant's allegations are inconsistent with the medical opinions "that show the claimant is quite functional." Id. In this regard, the ALJ stated:

> To illustrate, consultative psychologist, Troy Ewing, Psy.D., and R. Ryan Gunton, Ph.D., a registered psychological assistant evaluated the claimant on May 2, 2014, and opined that the claimant is not significantly limited in his ability to follow age appropriate simple, complex/detailed instructions, or maintain adequate pace or persistence in simple two-step repetitive tasks. In performing complex age appropriate tasks, the claimant is not significantly limited. He has mild to moderate impairment in maintaining adequate attention and concentration due to challenges with obsessive and compulsive thinking and behavior. In abilities of claimant to communicate by understanding, initiating, and using language in an age appropriate manner, the claimant is not significantly limited (Exhibit 8F, pg. 3).

/ / /

Consultative physician, Parimel Shah, M.D., examined the claimant on June 14, 2-14, and opined that claimant is apparently in a stable medical condition with well-controlled asthma and sleep apnea. His prognosis was very good (Exhibit 9F, pg. 5).

State agency medical consultants, L. Colsky, M.D., and R. Peterson, M.D., opined that in the domain of acquiring and using information, claimant has no limitations. In the domains of attending and completing tasks, and interacting and relating with others, claimant has less than marked rating. In the domains of moving about and manipulation of objects, and caring for yourself, the claimant had no limitation. In the domain of health and physical well-being, the claimant has less than marked rating (Exhibit 3A, pgs. 7, 8).

Id. at 25-26.

At Step 3, the ALJ also considered lay witness evidence from claimant's mother.

See CAR 24-26. Specifically as to claimant's mother, the ALJ stated:

The claimant's mother testified that claimant has breathing problems, has blinking of the eyes, always has to touch someone, goes around opening doors, windows, refrigerator, makes noises, and has good and bad days. He cries, will not sleep without medication, has anxiety, fidgets a lot, and does not eat in public very often. He can drive but is not attentive.

Id. at 24.

The ALJ rejected this lay witness evidence for the same reasons he gave for rejecting claimant's statements and testimony, discussed above. See id. at 25-26.

2.      Plaintiff's Contentions

Plaintiff argues:

The decision apparently evaluates X.'s and Gama's symptom allegations as an ensemble, and clearly doesn't credit them. Refusal to credit their testimony should be reversed on substantial evidence grounds.
The decision recounts some of their testimony at page 24 of the transcript; however, this is almost only a sample of what's recounted of their hearing testimony above in the statement of facts; and the decision says nothing about Gama's written statement at pages 314–316 of the transcript. It's also impossible to discern any specific symptom allegations *actually* being evaluated by the decision once one moves past page 24. This violates 20 C.F.R. §416.929(a), which promises *all* symptoms will be considered.
The default setting, so to speak, of this regulation, Social Security Ruling 16–3p, and case law such as what's discussed with citation to earlier cases in *Smolen v. Chater,* 80 F.3d 1273, 1281–85 (9th Cir. 1996) [e.g., *Cotton v. Bowen,* 799 F.2d 1403 (9th Cir. 1986) and *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993) (symptom testimony at second step of evaluation can only be rejected via specific, clear, convincing reasons)] is that symptom testimony *must* be considered.

Even accepting the decision's evaluation as not being fundamentally flawed because (1) no specific symptom allegations are evaluated, only some general allegation of disability that is impliedly made by *every* claimant simply by virtue of applying, and (2) the factors required under the above regulation and ruling to be evaluated at the second step5 are not evaluated, the decision's evaluation still doesn't comport with the facts.

The decision says that, first, these unspecified ensemble allegations "are inconsistent with mental health records" (transc., p.25), but it's immediately apparent this means only the psychological consultative exam. Here, the decision leaves out all the parts of this CE mentioned above that are *consistent* with information from X. and Gama.6 The decision even says, "No symptoms of motor or vocal tics were observed," but footnote 6 shows this examiner didn't doubt them, so what's the decision's point, or does it misunderstand the evidence? The last sentence of this decisional paragraph says "Treatment notes show mostly good response from medications," but this is far from clear, whereas the statement of facts reflects Dr. Asaikar doubling X.'s Seroquel and Zoloft dosages August 19, 2014, which kind of says the opposite of the decision.

The decision says "claimant's schoolteachers do not indicate any serious problems" (transc., p.25), but footnote 3 shows X.'s school *records,* at least, show serious problems.

The decision says "There is no evidence of tics or abnormal movements" (*id.*), but Dr. Asaikar doesn't seem to doubt there are (just as the psychological CE didn't doubt this); Dr. Asaikar consistently diagnosed Tourette's syndrome.

Second, says the decision, these unspecified ensemble allegations are "inconsistent with medical opinions" that X. is "quite functional." (*Id.*) Perhaps, but perhaps this is because no "appropriate specialist reviewed the record as a whole," because, as by now has been explained, the records of Dr. Asaikar, the school records — everything that is not a "snapshot," as these decisions are wont to call CEs, or nonexaminers relying on CE snapshots — connote something consistent with X.'s and Gama's allegations. In fact, what the psychological CE actually *said* is consistent with their allegations. (See fn.6.)

The decision's two reasons for not doing what ordinarily should be done, considering what X. and Gama said, don't comport with legal requirements (see fn.5) or with the facts.

An excurse [sic] must be made. Though the decision finds Tourette's, OCD, and anxiety to be severe at step two, as can be seen it refuses to believe X. and Gama precisely because they describe symptoms of these impairments — and the decision justifies disbelieving them by citing evidence and opinions that deny they exist. The decision has its cake and eats it too.

/ / /

/ / /

/ / /

/ / /

/ / /

1          3.     Disposition

2                 In essence, the ALJ found allegations of disability by the minor claimant and his

3     mother not credible because they are not supported by the objective medical evidence as well as

4     the opinion evidence of record.[2]  For the reasons discussed above, the court finds the ALJ erred

5     with respect to evaluation of the medication evidence because he failed to adhere to AR 04-1(9).

6     Given this error, the court cannot say the ALJ's credibility analysis and evaluation of lay witness

7     evidence are supported by substantial evidence to the extent the ALJ's rationale relied on medical

8     opinions offered by unqualified professionals.

9          C.     **The Listings of Impairments**

10                1.     The ALJ's Analysis

11                As to the Listings of Impairments, at Step 3 the ALJ considered whether

12    claimant's impairments satisfied the requirements of Listing 12.00, et seq., for adult mental

13    disorders and Listing 112.00, et seq., for childhood mental disorders.  See CAR 23.  The ALJ

14    concluded:

15                     . . .Despite the claimant's impairments, the medical evidence do[es] not
                       document listing-level severity, and no acceptable medical source has
16                     mentioned findings equivalent in severity to the criteria of any listed
                       impairment, individually or in combination.
17
18                     Id.

19                2.     Plaintiff's Contentions

20                Plaintiff argues:

21                     The decision is similarly wrong on the facts and wrong on the law
                       at step three, where it declares, without further elaboration, "the medical
22                     evidence do[es] not document listing-level severity" and "no acceptable
                       medical source has mentioned findings equivalent in severity" to the
23
_____
24         [2]      The ALJ's hearing decision is somewhat of a puzzle with respect to the minor
      claimant's testimony given the ALJ's reference to his description of daily activities which seem
25    consistent with the medical opinion evidence.  For example, the minor claimant testified at the
      hearing he can handle his own personal care, prepare meals, do yard work, ride a freestyle bike
26    and do tricks, and play video games.  While he also testified he has trouble focusing in class,
      makes noises, and likes touching things, he did not testify to the degree of these limitations.  This
27    testimony appears consistent with the various medical opinions finding no more than "less than
      marked" limitations in any functional domain.  Nonetheless, the ALJ did not base his credibility
28    finding on any analysis of the daily activities described by the minor claimant in his testimony.

listings. (Transc., p.23) But, "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." (*Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir. 2001)) Dr. Asaikar, the treating neurologist, for example, said that X.'s "tics and OCD are interfering with his schooling, quality of life." (Transc., p.431). And, for example, taken together with what we know about X.'s grades, his inability to stay focused or in one place in class, his inability to sleep, and inability to eat in front of others, the "B" criteria of age-appropriate cognitive/ communicative functioning and age-appropriate personal functioning are made out. This decision does not even begin to evaluate the then applicable "B" criteria, error in itself. As quoted above from the decision, and combined with what we know, at best the decision talk [sic] about lack of magic words from doctors amounts to expounding why it had a duty to develop the record, which an ALJ has a duty to do even when the claimant is represented: to wit, that no doctor had precisely opined regarding the listings in light of "the record as a whole," once again implicating AR 04–1(9). (*Brown v. Heckler,* 713 F.2d 441, 442 (9th Cir. 1983) [ALJ duty to develop the record]). Ignoring the ambiguities between certain formal opinions and the medical evidence from Dr. Asaikar, X.'s academic accommodations and failings, and his social and personal functioning problems, does not mean these ambiguities don't exist and trigger that duty. (*Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) [ambiguous evidence triggers duty to develop record]).

   3.   <u>Disposition</u>

Plaintiff's argument the ALJ relied exclusively on boilerplate is belied by the ALJ's hearing decision.  Contrary to plaintiff's suggestion the ALJ's conclusion is stated "without further elaboration," the ALJ referenced the medical evidence, <u>see</u> CAR 23, which he found did not support a Listing-level impairment, <u>see id.</u> at 25-26.  The ALJ's analysis of the medical evidence constitutes sufficient further elaboration of the ALJ's conclusion regarding applicability of the Listings.

The court is also unpersuaded by plaintiff's argument the ALJ improperly relied on the ". . .lack of magic words from doctors" because the "magic words" to which plaintiff refers are in fact the specific medical findings required under the law to establish childhood disability. <u>See e.g.</u> 20 C.F.R. § 416.926a(d) (defining levels of impairment required for a findings of functional equivalency).

/ / /

/ / /

/ / /

14

The court, however, agrees with plaintiff the record is in need of further development.  As discussed above, this case is fundamentally infected by violation of AR 04-1(9).  For this reason, the record should be further developed by obtaining current evaluations by qualified specialists.

**D.     Functional Equivalency**

At Step 3, the ALJ considered whether claimant's impairments functionally equal the severity of an impairment listed in the regulations.  See CAR 26.  The ALJ found claimant had no limitation in the domains of acquiring information, moving about and manipulating objects, and self-care.  See id.  The ALJ found claimant had less than marked limitations in the domains of attending and completing tasks, interacting and relating to others, and health and physical well-being.  See id.  The ALJ concluded: "Accordingly, the claimant does not have [an] impairment or combination of impairments that result in 'marked' limitations in two domains of functioning or 'extreme' limitations in one domain of functioning."  Id.

Plaintiff argues:

> The decision doesn't explain its functional equivalency domain assessments, and by any reading of "the record as a whole" they cannot be correct.
> As mentioned, the decision indiscriminately awards "significant weight" to *every* opinion that looks like an opinion, even the teacher questionnaires. But 20 C.F.R. §416.926a(b) directs looking at the "information . . . in your case record," just as 20 C.F.R. §416.945(a) directs looking at "all of the relevant medical and other evidence" when assessing residual functional capacity, and Social Security Ruling 09–2p, at section III states that once a medically determinable impairment is established from an acceptable medical source "we consider all relevant evidence in the case record" to assess the functional equivalency domains. By now the point has been amply made that Dr. Asaikar is the appropriate treating specialist source of evidence and the primary relevant medical source for the entire last two years of this claim. Yet Dr. Asaikar and his records are not even considered in the functional equivalency discussion except, without credit, for the irrelevant fact that neurological, motor, and sensory exams were normal (though this neurologist's *findings and diagnoses* certainly were not). The decision reflects again (cf. also arg. B) a classic instance of "isolating a specific quantum of supporting evidence." (*Jones v. Heckler, supra,* 760 F.2d 993, 995 (9th Cir. 1985) *Hammock v. Bowen, supra,* 879 F.2d 498, 501 (9th Cir. 1989)).
> That its domain assessments happen to coincide with the nonexaminers', who repose among this large crowd credited with indiscriminate "significant weight," should not save the decision from error and rather manifestly doesn't mean it reached the right result. Without elaborating greatly, first, nonexaminers, by themselves, cannot

15

constitute substantial evidence justifying rejection of examining or treating doctors, (*Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1996), it's not clear what special purchase on evidence these nonexaminers had that others didn't that might get them case law traction, and certainly the decision doesn't give "specific and legitimate reasons" (*id.*) for its unaccredited adoption of these nonexamining assessments; second, these assessments are manifestly wrong as a matter of substantial evidence with the clearest examples being the nonexaminers' and decision's assignments of "no limitations" to Acquiring and using information and Caring for yourself: it can hardly be gainsaid that a GPA of 1.667, X.'s various school accommodations, and exiting public school for independent study because one's tics and inability to stay put represent something other than "no limitations" for Acquiring &c. [sic]; and one need only examine Social Security Ruling 09-7p to understand that X.'s uncontrollable tics, noises, compulsions, insomniac pacing, and so on (*acknowledged* as severe by the decision at step two) are the kind of aberrant "self-soothing behavior" contemplated by Caring for yourself, and hence that domain too cannot possibly be "no limitations."

Plaintiff's argument is well-taken because, as with the ALJ's Listings analysis, the ALJ's functional equivalency analysis is likewise flawed as it relied on unqualified medical opinions.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.  CONCLUSION**

Based on the foregoing, the undersigned recommends that:

1.     Plaintiff's motion for summary judgment (Doc. 14) be granted;

2.     Defendant's cross-motion for summary judgment (Doc. 15) be denied; and

3.     The Commissioner's final decision be reversed and this matter be remanded for further proceedings consistent with these findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  January 11, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE